January Term,
1862.

KANE vs. THE ROCK RIVER CANAL COMPANY, impleaded &c.

KANE
v.
ROCK RIVER
CANAL Co.

15  179.
74   78

Where proceedings in partition are properly taken to bind *unknown owners*, the judgment not only concludes them in respect to any interest they may have as tenants in common, but precludes them from showing afterwards that they had a paramount title in *severalty* to any part of the partitioned premises.

A complaint for partition stated that the plaintiff owned the undivided three eighths of the land; that A, one of the defendants, owned an undivided one eighth; that it appeared by the records that B, another defendant owned one sixteenth, and C, another defendant, one fourth, and that F did own the remaining three sixteenths, but had died, leaving divers persons to the plaintiffs unknown, his heirs, and that if said A, B and C did not own the interests so mentioned as belonging to them, such interests belonged to unknown owners, whose names, as also the names of said heirs, the plaintiffs were unable to ascertain: *Held*, that the allegations were sufficiently comprehensive to include any and all unknown owners, provided the title to any portion proved to be in different parties from those supposed.

Where there are several plaintiffs in a suit for partition, an affidavit made by *one* of them only, stating merely, in the general language of the statute, that there are parties interested in the premises "who are unknown," is not sufficient to authorize an order of publication which will give jurisdiction over unknown owners, there being nothing to show that there were not other owners known to the *other* plaintiffs.

APPEAL from the Circuit Court for *Milwaukee* County. Action by *Alonzo L. Kane*, to recover real estate. The answer of the defendants was, 1. A general denial. 2. That the said *Canal Company*, being invested with lawful authority for that purpose by certain acts of the legislature of the territory of Wisconsin (referred to by their titles), and finding it necessary, in the construction of the improvements authorized by said acts, to make a dam across the Milwaukee river at the point mentioned in the complaint, did, in the spring and summer of the year 1839, enter upon, take possession of, and commence to use for that purpose, the premises in the complaint described, and did then and thereafter erect, and have ever since maintained, and still maintain a dam standing partly thereon, to raise and supply water for its canal from said river; and that by virtue of the premises, the company has acquired the right perpetually to use and possess the same; and that the other defendants have no interest in said premises, except as lessees of

January Term, 1862.

KANE
v.
ROCK RIVER CANAL CO.

the company. 3. That said company entered into possession of said premises under claim of title exclusive of any other right, founding such claim upon a written instrument, to wit, an act of the legislature of the territory of Wisconsin, approved January 5th, 1838, as being a conveyance of said premises, and had been in the actual and continued occupation and possession of the premises for ten years before the commencement of this action. 4. Continual actual occupation and possession of said premises, under claim of title exclusive of other right, for twenty years before the commencement of this action. 5. Exclusive actual use and possession of the premises for the purpose of maintaining a dam across Milwaukee river, continually, a time whereof the memory of man runneth not to the contrary; 'that an incidental use of said dam has always been to render available a water power at that point in Milwaukee river, and that for the full period of twenty years next before the commencement of this action, the company and those claiming under it have exclusively used said water power for useful purposes in propelling machinery &c., adversely to, and with the knowledge and acquiescence of the plaintiff and those under whom he claims title.

After the jury was sworn, the plaintiff was permitted to amend his complaint, and a motion by the defendant for leave to file an amended answer was denied, but as the exceptions taken to these rulings were not passed upon in this court, the nature of the several amendments made, or of those denied, need not be stated.

The plaintiff gave in evidence a patent from the United States to one Dunbar, for lots 1 and 6 in the N. E. qr. of sec. 21, T. 7, R. 22, E., in which was included the land in controversy, and then offered in evidence the record of an action for partition in the Milwaukee circuit court, in which Charles I. Kane, John H. Tweedy and James S. Brown were plaintiffs, and Carl Becman and others were defendants, the material portions of which are the following: 1st. The bill of complaint, which stated that the plaintiffs were seized in fee of the undivided 3-8ths of said lots 1 and 6, as tenants in common with said Carl Becman and the other defendants;

January Term 1862.

KANE
v.
ROCK RIVER CANAL CO.

that said Carl Becman was seized in fee of an undivided 1-8th of said premises, and that the plaintiffs were unable to ascertain with certainty the precise interests of the other defendants, but believed that one Joel Parker was the owner in fee of an undivided 1-16th of said lots; that one B. F. Adams was the owner in fee of an undivided 1-4th of said lots, and that the remaining 3-16ths did belong to one Phineas Fisk, who had died leaving divers persons his heirs, whose names were to the plaintiff unknown; that if said Becman, Parker and Adams did not then own the interests above mentioned as belonging to them respectively, such interests belonged to unknown owners, whose names, as also the names of said heirs, the plaintiffs were unable to ascertain. The bill contained the other allegations usual in a bill for partition, and prayed a subpœna against the said Becman, Parker and Adams, and against "said unknown owners." Annexed to the bill was the affidavit of Charles I. Kane, stating that he knew its contents, and that the same were true according to the best of his knowledge, information and belief. 2d. The affidavit of Charles I. Kane, dated August 27, 1850, which, after giving a description of the lands of which partition was sought, and showing that a subpœna had been regularly issued upon said bill, and had not been served upon the defendants Parker and Adams, stated that said Adams and Parker did not reside within the state of Wisconsin, and could not be found therein, "and that there are parties interested in the premises above described, who are unknown." 3d. An order made by the circuit judge at chambers on the same day, which was as follows: "Charles I. Kane, John H. Tweedy and James S. Brown vs. Carl Becman, Joel Parker, Benjamin F. Adams and Unknown Owners. It appearing to the satisfaction of this court, by the affidavit of Charles I. Kane, that the said defendants Joel Parker and Benjamin F. Adams reside out of this state and cannot be found therein; and it further appearing that the bill in this case was filed for the partition of the following lands (describing them), and that there are parties having an interest in said premises who are unknown; it is therefore, on motion, &c., ordered, that the said defendants Joel

January Term, 1862.

KANE
v.
ROCK RIVER
CANAL CO.

Parker and Benjamin F. Adams and the said unknown owners, and all parties interested in the said premises above described, appear and answer this bill in the cause by the 2d day of December, 1850, or that such bill will be taken as confessed by them. It is further ordered that a copy of this order be published in the Milwaukee Sentinel and Gazette, a paper printed" &c. Attached to a copy of this order was an affidavit of its publication, as to the sufficiency of which a question was made by the appellant, but it not being material to the decision of the cause in this court, the affidavit is omitted. 4th. The decree in the cause, made June 11th, 1851, in which, after reciting that since the filing of the bill, Brown, one of the complainants, and Becman, one of the defendants, had conveyed their interest in said land to Charles I. Kane, and that said Adams and the heirs of Fisk had conveyed their interests to the defendant Parker, it was adjudged that the plaintiff Charles I. Kane was seized in fee of 3-8ths, J. H. Tweedy of 1-8th, and Joel Parker of one-half of the land described in the complaint, and partition thereof was ordered to be made accordingly, if, upon a reference, it should appear that such partition could be made without prejudice to the owners ; and in case it should appear that a partition of the premises, or of any portion thereof, could not be made without prejudice to the owners, that the same or such portion thereof should be sold under the direction of the sheriff of the county of Milwaukee, as provided by statute. 5th. A decree in said cause, made April 10th, 1854, by which the report of the commissioners appointed to make partition of said real estate, whereby certain parcels of the land were set apart in severalty to said Kane, Tweedy and Parker, and the remaining portion thereof declared to be incapable of division, was confirmed, and said remaining portion was ordered to be sold by the sheriff of said county at public auction, after giving notice of sale, &c. 6th. The report of said sheriff, showing that on the 18th day of October, 1856, after giving notice, &c., he sold said remaining portion of land at public sale to *Alonzo L. Kane*, for $5070 ; and that he had paid the proceeds, after deducting costs, &c., into court, and had executed a deed for said land to the pur-

chaser. 7th. An order or decree of said court, confirming the sale and deed made by the sheriff, and directing a distribution of the proceeds.

The tract so sold by the sheriff embraced the land in controversy in the present action; and the record in this action states that the persons who were made parties by name to the partition suit "appeared therein, claimed in their pleadings, and had set out to and among them in the decree of partition, the whole of the land described in the bill of complaint, and their answers were actually filed before the order *pro confesso* was entered."

The defendant objected to the admission in evidence of the foregoing record, for these among other reasons: that it was irrelevant; that no title to any part of the premises in suit had been proved to be in the parties to the partition suit, or in any of them; that the record shows on its face that there were no unknown owners, and that unknown owners were improperly named as parties by that name in the proceedings; that the circuit court in that suit never gained jurisdiction of the parties unknown; and that none of the defendants in the present action were ever served with process in said suit, or named as parties, or ever appeared therein; and that the *Canal Company*, being a public corporation located by the law in Milwaukee county, could not in law be an unknown owner. The court overruled the objections, and admitted the record in evidence; and the defendants excepted. The plaintiff then read in evidence, over the objection of the defendants, the sheriff's deed before mentioned, and the defendants excepted. When the plaintiffs closed, the defendants moved for a nonsuit, because the plaintiff had proved no title to the land in suit and no right of possession in himself. The court overruled the motion, and the defendants excepted.

The plaintiff objected to the introduction of any evidence on the part of the defendants, under their answer: 1st. Because there is no allegation in the answer that the *Canal Company* ever paid for the land in suit, or ever paid damages for taking the same, and the clause in their charter authorizing such taking without previous payment, is void.

2d. No proof can be given in support of that part of the answer which alleges actual adverse possession of the land for ten years under the charter. as being a conveyance, &c., because the charter is not such a "writing" as is contemplated in the section of the limitation act in that case provided. 3d. The proceedings, sale, deed and confirmation in the partition case, are conclusive upon the rights and claims of the defendants at the time of the decree in partition.   4th. The company never had any right to take possession and occupy for purposes of water power.  The court sustained said objection, and excluded all testimony on the part of the defendants; and the defendants excepted.   Among the proofs offered by the defendants, was evidence to show that the partition suit before mentioned was commenced with full knowledge on the part of the complainants therein, and of the plaintiff in this suit, of the precise possessory right claimed by the *Canal Company* to the premises in controversy, and that said suit was commenced and prosecuted throughout with the full knowledge that said company was located in the county of Milwaukee, its offices situated there, and its officers residents of and then present in said county.

The jury, by direction of the court, found a verdict for the plaintiff, declaring that he was entitled in fee to the premises in controversy, and that the defendants unlawfully withheld the same, and assessing the plaintiff's damages at six cents. Motion for a new trial overruled, and judgment. on the verdict.

*O. H. Waldo*, for the appellant:

1. The affidavit for the order of publication was insufficient. The record also shows on its face that there were no unknown owners, and that unknown owners were improperly named as parties by that name in the proceedings.   2.  Partition, under our statute, is a proceeding to divide lands—not to try titles.  ·The judgment is not that the titles to the several parcels shall stand as they are there determined for the purpose of partition merely, "but that such *partition* be firm and effectual forever."   It is the partition, and not the determination of the title, that is declared to be effectual and made conclusive on the parties enumerated in section 31 of

the act concerning partition. R. S., 1849. The Massachusetts act, which was construed in *Cook vs. Allen*, 2 Mass., 462, makes the judgment valid to *all intents and purposes*, and in the English act therein referred to, it is made to *conclude* all persons, whatever right or title they had to the premises; while our act of 1849 only made it conclusive upon certain parties enumerated in section 31, and goes on *ex industria* to save the rights of all others. The evil to be remedied was the inconvenience which *owners* of undivided interests suffered from not being able to get partition when their cotenants were absent. That evil is cured when means are provided for partition in all cases where a true owner of any undivided interest applies for it, and the remedy is none the less complete because a true owner, who does not appear in and has no notice of the suit, is permitted afterwards to contest with an intruder to whom an interest may have been erroneously assigned, the title to the specific parcel which is set out to him. Suppose A, B and C are tenants in common. B conveys his third to C, who omits to record his deed, and A commences suit for partition, alleging truly that he owns one third, and that the owners of the other two thirds are unknown to him. The land is divided into three equal parcels—one given to A, one to B, and one to C—C not being named in the proceeding, and having no notice. Now what harm will arise and in what respect will the cure of the evil alluded to be less effectual, if C is admitted to recover in ejectment the parcel which is set out to B, but to which B has no title, he having previously sold and conveyed it to C? What we claim is, that though the *partition* may be conclusive against all the world, the decree binds no one upon the question of title except parties to the record and privies, and that no one except tenants in common, joint tenants and coparceners can be made parties without being named in the record. Again, it is expressly enacted (sec. 32) that "such decree and partition shall not affect any tenants, or persons having claims as tenants, in dower, by the curtesy or for life, to the whole of the premises which shall be the subject of such partition, nor shall any such decree and partition preclude any person, except such as are specified in

January Term, 1862.

KANE
v.
ROCK RIVER
CANAL CO.

sec. 31, from claiming any title to the premises in question, or from controverting the title or interest of the parties between whom such partition shall be made." So if the right of the defendants be in the nature of the claim of a tenant, or for life, i. e. for the life of the corporation, then it is expressly saved by the first clause of sec. 32; and if the claim of the defendants be to the whole of the premises in fee, then if the words "all persons interested," in sec. 31, are held, as the same and similar expressions in other sections of the act must be, to be confined to persons interested in the manner mentioned in the 1st section of the act, their rights are expressly preserved by said section 32. Such we think is the plainly expressed intention of the legislature. Besides, all the defendants, except the company, allege that their interest is merely that of tenants, and their rights are clearly saved in terms by said sec. 32. In the case of *Cook vs. Allen*, which appears to have so greatly influenced this court in deciding the case of *Nash vs. Church* (10 Wis., 303), the chief justice is careful to confine the effect of the decree to the right of *possession* merely, and clearly recognizes the right of the owner afterwards to bring his writ of right and evict the party who receives a parcel in partition. This limited effect may very well have been given to the decree under an act which by its terms was "to conclude all persons whatever," or was to "be valid to all intents and purposes," but it is very different so to hold under an act which enumerates the persons who shall be concluded, and saves the rights of all others. With the interpretation sought to be given to the partition act by the respondent, the act would be in conflict with the federal constitution. Counsel also contended that the rights of the defendants were saved under the 81st sec. of the partition act of 1849.

*Brown & Ogden*, for respondents:

Where unknown owners are made parties, the statute makes the proceeding one *in rem*, which binds the world, and in itself excludes adverse claims. R. S. 1849, p. 574; *Nash vs. Church*, 10 Wis., 303; *Whittemore vs. Shaw*, 8 N.H. , 393.

May 15.    *By the Court*, PAINE, J. The only question presented on

this appeal is as to the effect of the record in the partition
suit under which the plaintiff claims title, though its decision
may not determine at all the ultimate rights of the parties.
It is claimed by the appellant, that even if the partition pro-
ceedings were properly taken, to bind unknown owners, yet
they should be held to have bound only their interest as ten-
ants in common, and that none of them would be precluded
from afterwards coming in, and showing a paramount title
in severalty to any part of the partitioned premises.   This
position is in conflict with the decision of this court in *Nash
vs. Church*, 10 Wis., 303, and the argument in this case has
not changed the conclusion there expressed.   It is undoubt-
edly true, as contended, that the object of partition pro·
ceedings is to make division among tenants in common.
It is therefore necessary, in such proceedings, to allege that
the land sought to be divided is thus jointly owned by the
parties.   And if any party claims the whole or any part of
it in severalty, it is his duty to set up that fact to defeat or
suspend the partition proceedings, until that question could
be determined.   If he does not do this, the adjudication that
the land is held in common by the parties, and thus proper-
ly subject to partition, being a necessary part of the judg-
ment, he is as much concluded by the judgment upon that
point, as upon the amount of his interest or any other mat-
ter necessarily involved.   And if properly made a party as
an unknown owner, he is bound in the same way as he would
be if named as a party and served with process personally.
And it would introduce great confusion into the settlement
of titles, and substantially defeat the object of partition pro-
ceedings, if any of the parties to those proceedings might,
after they were all completed, without having set up any
claim of title inconsistent with them, bring actions against
the other parties, to recover their portions, upon a claim of
paramount title in severalty.   Without attempting to com·
ment on them in detail, we will refer to the following au-
thorities as sustaining this conclusion : *Kester vs. Stark*, 19
Ill., 328 ; *Foxcroft vs. Barnes*, 29 Maine, 128 ; *Rogers vs. Tuck-
er et al.*, 7 Ohio St., 417 ; *Pfeltz vs. Pfeltz et al.*, 1 Md. Ch.
Dec., 455 ; *Reese vs. Holmes*, 5 Rich. Eq., 540, 541 ; *Blakely*

January Term, *vs. Calder*, 15 N. Y., 617; *Mead vs. Mitchell*, 17 N. Y., 210;
1862.      *Croghan vs. Livingston*, id., 218, 227.

KANE
v.
ROCK RIVER
CANAL CO.

The same conclusion seems also to be sustained by those cases, some of which were cited by the counsel for the appellant in *Nash vs. Church*, 10 Wis., 309, which hold that a partition suit is not designed as a substitute for ejectment, to try conflicting titles, and that the court will not proceed to a partition until the title is settled. Such being the rule, if the court does proceed to a partition, it must therefore adjudge that the title has been settled, and the parties should be concluded by it.

But as the judgment in partition proceedings has such effect, we think that a good reason why the statute should be strictly complied with, to give the court jurisdiction over unknown owners, who have no personal notice. It is not probable that the plaintiff in the partition suit regarded this defendant as having any such interest in the property as required it to be made a party, as the allegations of the complaint seem to dispose of the entire title among others. Yet we think its allegations also sufficiently comprehensive to include any and all unknown owners, provided the title to any portion proved to be in different parties from those supposed. So that the appellant here was bound, if the proceedings were sufficient to bind unknown owners. The only objection made to them, so far as this point is concerned, is that the affidavit made to authorize publication against unknown owners, does not show that there were no other owners known to the other complainants, besides the one making the affidavit. The statute provided that an order of publication might be made where there were parties having an interest who were " unknown " &c., and " the fact was made to appear by affidavit " &c. R. S. 1849, chap. 108, sec. 11. This statute does not expressly say to whom these owners must be " unknown," but it obviously intended that they must be unknown to the plaintiff in the suit, as nobody else's knowledge or want of knowledge on the subject would be material. The affidavit appearing in this partition record was made by Charles I. Kane, one of the complainants, and states

merely in the general language of the statute that there were parties interested in the premises who were unknown. It did not even say that they were unknown to him, though perhaps that would be the fair interpretation of it. But we do not think its construction could go beyond that, or that it could be held to show that there were not other owners known to the other complainants in the suit. It does not purport to state that there were not, and probably the person making the affidavit could not have sworn to the knowledge of his co-plaintiffs on the subject. The question then is, whether, where there are several complainants in a partition suit, an affidavit by one of them that there are parties interested who are unknown, which by its most favorable construction can be only held to mean that they are unknown to him, is sufficient to authorize an order of publication which will give jurisdiction over unknown owners; there being nothing to show that there were not other owners known to the other plaintiffs? We think it is not, and the statute never intended to allow any party to be proceeded against as an unknown owner, who might have been a known owner to some of the plaintiffs in the suit. The general policy of the law upon the subject of notice to all who are interested in the litigation, as well as the clearest dictates of justice, require actual notice to be given, where it can be done. Methods are provided of giving constructive notice where actual notice cannot be given, and this is of necessity the case with respect to unknown owners in partition suits. But they should be unknown to all the plaintiffs. And the policy of the law might often be entirely defeated by allowing them to be proceeded against as unknown owners merely because they were unknown to one plaintiff, although they might have been well known, as owners, to all the others.

Our conclusion on this point is sustained by the following cases: *Jeffrey's Heirs vs. Hand's Heirs*, 7 Dana, 89; *Thruston et al. vs. Masterson et al.*, 9 id., 236; *Taylor's Heirs vs. Watkins et al.*, 4 B. Mon., 569.

We do not think that the appellant's point that the *Canal Company* could not under any circumstances be proceeded

against as an unknown owner, for the reason that its charter was a public act, is well taken. Every body might be chargeable with a knowledge of the provisions of the charter, but certainly no one would be bound to know that the company claimed to own or owned an interest in any particular tract of land.

But for the reason already given, we think the judgment, which was based entirely upon the partition record, must be reversed, with costs, and a new trial ordered.

Ordered accordingly.

NOTE.—On a petition for rehearing (which was overruled), the counsel for respondents argued that the affidavit made by Charles I. Kane as to "unknown owners," was sufficient, but that if otherwise, the presumption should be that another affidavit was made; that the circuit court was called upon by the statute directly to adjudicate upon the sufficiency of the proof by affidavit, and that its decision cannot be reversed in a collateral proceeding, citing *Grignon's Lessee vs. Astor et al.*, 2 How., 339; *Tallman vs. Ely*, 6 Wis., 252; *Parker vs. Kane*, 22 How., 1; *Foot vs. Stevens*, 17 Wend., 483; and *Hart vs. Seixas*, 21 id., 40, overruling *Denning vs. Corwin*, 11 Wend., 647; *Kempe's Lessee vs. Kennedy*, 5 Cranch, 173; *Skillern's Exec'rs vs. May's Exec'rs*, 6 id., 267; *Cole et al. vs. Hall*, 2 Hill, 625; *Ex parte Tobias Watkins*, 3 Pet., 205; *Peacock vs. Bell*, 1 Saund., 74. REP.