JAMES KENT et al., as Executors, etc., Respondents, *v.* THE CHURCH OF ST. MICHAEL, Appellant.

Where an estate is vested in persons living, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto, and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand not only for themselves, but also for the persons unborn.

Where an unrecorded deed of land has been lost, an action in equity is maintainable to compel the grantor, or after his death those representing his title, to execute another deed, so as to clothe the grantee with the record title.

Such an action is not dependent upon any of the provisions of the Code of Civil Procedure (§§ 1638, 1650, 2345) in reference to the determination of adverse claims to real estate and authorizing actions in cases specified to procure a conveyance, but has its sanction in the general jurisdiction of a court of equity.

Statement of case.

Plaintiffs as executors of K., under a valid power of sale contained in his will, contracted to sell certain premises to defendant; it refused to complete the purchase on the ground of defect of title to one-half the premises. K. had in fact purchased and paid for that half, and received a deed thereof, which was not recorded and was lost. S. the grantor had died leaving a will devising all her real estate to her executors in trust, for her three children during life, and after the death of any child to pay over and divide his or her share to and among his or her children then surviving, and the lawful issue of any such child or children then deceased. Plaintiffs brought an action against trustees appointed by the will of S. her three children and also her grandchildren then living, asking that defendants execute and deliver a deed; a special guardian was appointed for the infant defendants, and in pursuance of a judgment in said action granting the relief sought, the adult defendants in their own names, and the infants by their special guardian executed a deed to plaintiffs, and to the devisees and heirs at law of K. The grantees in said deed then united in a deed to defendant, which it refused to accept. In an action to compel specific performance, *held*, that the grandchildren of S. took under her will vested remainders in the shares of their parents, subject to open and let in after-born grandchildren; that the defendants in the action so brought by plaintiffs represented the whole title to the real estate of S.; that after-born grandchildren were concluded by the judgment, and that the deed of said defendants conveyed a good title; that the said judgment simply confirmed the title to land which S. had conveyed, and there was no occasion for the court to make provision therein for persons not *in esse* as they by the adjudication never could have an interest.

*Kilpatrick* v. *Barron* (125 N. Y. 751); *Harris* v. *Strodl* (132 id. 392); *Monarque* v. *Monarque* (80 id. 320); *Cheeseman* v. *Thorne* (1 Ed. Ch. 629); *Mead* v. *Mitchell* (17 N. Y. 210); *Brevoort* v. *Grace* (53 id. 245), distinguished.

Defendant accepted a conveyance of the one-half interest not questioned and the parties entered into another written contract by which plaintiffs stipulated to convey a good and indefeasible title to the other half within six months thereafter. Subsequently the parties made a verbal agreement by which defendant was to take possession, and occupy the premises, until plaintiffs record title was perfected, paying a stipulated rental. Defendant took and has continued in possession without offering to surrender the same. *Held*, that these facts constituted in law a waiver of the stipulation as to time of performance.

(Argued October 13, 1892; decided November 29, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an

order made February 8, 1892, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This was an action to compel the specific performance of a contract for the purchase of land.

The facts, so far as material, are stated in the opinion.

*John J. Delany* for appellant. The court will not decree specific performance of a contract for the purchase of realty where the title of the vendor is doubtful. (*Adams* v. *Valentine*, 33 Fed. Rep. 1; *Cooper* v. *Denue*, 4 Bro. C. C. 80; *Fleming* v. *Burnham*, 100 N. Y. 1; *Moore* v. *Williams*, 115 id. 586; 26 N. Y. S. R. 259; *Aldrich* v. *Bailey*, 28 id. 571; *Sloper* v. *Fish*, 2 V. & B. 565; *Rogers* v. *Waterhouse*, 4 Drew, 329.) The title of plaintiffs to the property in question is doubtful, and, therefore, this court will not decree specific performance of the contract. (*Schriver* v. *Schriver*, 86 N. Y. 585; *Argall* v. *Raynor*, 20 Hun, 267; *Fleming* v. *Burnham*, 100 N. Y. 46; *Monarque* v. *Monarque*, 80 id. 326; *Kilpatrick* v. *Barron*, 125 id. 723; *Hotaling* v. *Marsh*, 132 id. 29; *Harris* v. *Strodl*, Id. 392; *Lockman* v. *Reilly*, 95 id. 64.) The failure of the plaintiffs to tender a clear and marketable title within the six months specified constituted such a breach of the agreement of sale as justified its rescission by the defendant, and this court will not now decree specific performance. (*Tilly* v. *Thomas*, L. R. [3 Ch.] 61–69; *Dominick* v. *Michael*, 4 Sandf. 374; *Smith* v. *Wells*, 7 Paige, 22; *Baumann* v. *Pinckney*, 118 N. Y. 604; *Bernard* v. *Lee*, 97 Mass. 94; *Smith* v. *Edwards*, 88 N. Y. 103; *Bushnell* v. *Carpenter*, 92 id. 272; *Jenkins* v. *Fahey*, 73 id. 356; *Moore* v. *Appleby*, 108 id. 237.) The plaintiffs having conceded the sufficiency of defendant's objection to the title tendered on November twenty-fifth cannot now insist that it is untenable. (*Ashton* v. *Wood*, 3 S. & G. 436.) The plaintiffs elected to consider the contract of June 2, 1890, as broken by defendant's refusal to take the title tendered on November 25, 1890, and they cannot now assert a right to reconsider that election for their own benefit. (*Sel-*

*leck* v. *Tallman*, 87 N. Y. 106.)    Assuming that the attorney for the defendant made an agreement in modification of the terms of the contract of June 2, 1890, he could not bind the defendant thereby.    (*Carnes* v. *Platt*, 6 Robt. 127.)

*Everett Greene* for respondents.    Under section 1337 of the Code of Civil Procedure this court will not review questions of fact depending on a conflict of evidence.    (*Healy* v. *Clark*, 30 N Y S. R. 897; *Coffin* v. *Holister*, 124 N. Y. 664.)    The undisputed fact that defendant remained and is still in possession of the premises in question under the contract alleged in the complaint would of itself constitute a waiver of any default of the plaintiffs in nonperformance of the contract within the time specified therein.    (*Tompkins* v. *Hyatt*, 28 N. Y. 347; *Stevenson* v. *Maxwell*, 2 id. 415; *Gale* v. *Nixon*, 6 Cow. 445; *Schiffer* v. *Dietz*, 83 N. Y. 308.)    The fourth clause of the will of Helen L. R. Stewart, deceased, created a valid express trust.    (*Taggart* v. *Murray*, 53 N. Y. 233; *Dodge* v. *Stevens*, 105 id. 590; *U. S. T. Co.* v. *Roche*, 116 id. 120; *Townsend* v. *Frommer*, 125 id. 446.)    But conceding that the grandchildren of Mrs. Stewart took a vested and not a contingent interest under the will and were necessary parties, the subsequent proceedings which resulted in the judgment of May 9, 1891, were conclusive as against such grandchildren and were sufficient to divest any unborn grandchildren of any title they might hereafter have in the premises.    (Code Civ. Pro. § 2345; *Brevoort* v. *Grace*, 53 N. Y. 257; *Mead* v. *Mitchell*, 17 id. 210; *Brown* v. *Snell*, 57 id. 299; *Moore* v. *Little*, 41 id. 82; *Jenkins* v *Fahey*, 73 id. 355; *Livingston* v. *Green*, 52 id. 118; *Smith* v. *Scholtz*, 68 id. 42; *Sheridan* v. *House*, 4 Abb. App. Cas. 218; *Brevoort* v. *Brevoort*, 70 N. Y. 140.)

EARL, Ch. J.    The plaintiffs are executors under the will of James Kent, deceased.    The testator devised all his property to his executors as trustees in trust, to pay the net income thereof to his wife during her life, and he authorized and empowered them to sell any of his real estate.    It is not ques-

tioned that a valid trust was thus created; that the legal title to the real estate devised was vested in the trustees, and that they had a valid power of sale. In April, 1890, in the exercise of the power of sale, they entered into a written contract with the defendant, by which they agreed to convey to it certain real estate of which they claimed their testator was seized at the time of his death, and they agreed to execute to it an executors' deed on the second day of June thereafter, " containing the usual covenants and assuring to them the fee simple of the said premises free from all encumbrances."

At the time and place named in the contract it was ascertained that the testator had no record title to one-half of the land contracted to be sold and no deed to him for that half could be found. The defendant, therefore, refused to take a deed of that half of the land, but took a deed of the other half and paid therefor; and then another written contract was made between the parties by which it was agreed that the plaintiffs for the consideration named should within six months thereafter convey to the defendant an indefeasible title to the one-half of the land mentioned. The plaintiffs' testator had in fact purchased that half of Helen L. R. Stewart and paid for it, and taken a deed thereof which had not been recorded and was lost. She had died leaving a will in which she devised to trustees all her real estate to be by them divided into three equal parts, directing them to pay the income of one part to each of her three children during the lives of her children respectively, and after the death of any child to pay over and " divide the said share to and among his or her children then surviving, and the lawful issue of any such child or children who may have died leaving issue, in equal proportions, *per stirpes*."

After the making of the second contract, the plaintiffs commenced an action in which they made defendants, the trustees under the will of Mrs. Stewart, her three children and only heirs, and also her grandchildren who were infants, alleging in their complaint that in October, 1877, Mrs. Stewart conveyed the land in question to James Kent by deed properly

acknowledged; that at that time Kent paid to her substantially all the purchase price and went into the possession of the land and remained in possession until November, 1886, when he died seized and possessed of the land in fee simple absolute. They then alleged the will of James Kent, the death of Mrs. Stewart and her will, the contract of sale with the defendant and the loss of the deed from Mrs. Stewart unrecorded, and the fact that it could not be found after diligent search, their belief that it had been lost, that they and their testator had been in possession of the land for twelve years claiming the same absolutely in fee, and that owing to the loss of the deed there is a cloud on the title to the land and that thus the defendants have on the record an unjust claim to the same; and they prayed judgment that the defendants in that action execute and deliver to them a good and sufficient deed so as to vest and confirm the title to the land absolutely in them as the representatives of the estate of Kent, and for such other and further relief as the court should deem proper. The defendants were all adults but the grandchildren, and for them a special guardian was appointed. The adults answered the complaint admitting the allegations thereof, and the infants, by their guardian, answered the complaint by putting in issue the allegations thereof. The action was brought to trial, and the facts alleged in the complaint were established and found, and judgment was given to the plaintiffs pursuant to the prayer of the complaint. In compliance with the judgment, the adult defendants, in their own names, and the infant defendants, by their special guardian, executed a deed of the land to these plaintiffs and all the devisees and heirs at law of James Kent, deceased. The parties of the second part in that deed then united in executing a deed of the land to the defendant, and it refused to accept the same when tendered to it by the plaintiffs, on the ground that the title tendered was still defective.

Under the will of Mrs. Stewart, her grandchildren took vested remainders in the shares of their parents, liable, however, to open and let in after-born grandchildren. Thus the

trustees, children and living grandchildren represented the entire estate of Mrs. Stewart, subject, however, to the contingency that there might be after-born grandchildren; and it was upon this contingency that the defendant based its objection to the title tendered to it, the claim being that after-born grandchildren would not be concluded by the judgment which had been rendered, and that their rights would not be affected by the deed given in pursuance of that judgment. The sole question for our determination is whether that claim is well founded.

There is no doubt that if the defendants in the action brought by these plaintiffs against Mrs. Stewart's executors, children and grandchildren, represented the whole title to her real estate, then the action was proper, and the conveyance given in pursuance of the judgment would carry a good title to the defendant. The deed from Mrs. Stewart by some accident had been lost after James Kent had paid for the land, and had been in possession of the same for many years, claiming title thereto, and on account of the loss his executors could not make a good record title to the land in pursuance of their contract with the defendant. Under such circumstances, there can be no question that a court of equity had power and jurisdiction to relieve the persons who represented the grantee, and who in fact had title to this land, from the dilemma in which they were placed by the loss of the deed, by compelling Mrs. Stewart, if living, and after her death those who represented her title, to execute another deed.

A purchaser under a valid contract of purchase who has performed the contract on his part and is entitled to a deed from his vendor, can compel specific performance of his contract by the delivery of the deed to him in pursuance thereof, and this can be done in the exercise of the jurisdiction of a court of equity to compel the specific performance of contracts. But where the contract has been performed and the deed given which the purchaser by some accident or misfortune has lost so that he has no record title to the land which was conveyed to him, it is well settled that a court of equity will compel the

vendor to execute another deed so as to clothe the purchaser with the record title; and an action for that purpose is not dependent upon any provisions of the Code contained in sections 1638, 1650 and 2345, to which our attention has been called. It has its sanction in the general jurisdiction of a Court of Equity. Under such circumstances it would be inequitable for the vendor to retain the record title and to refuse to execute a new deed, and the purchaser can be relieved only by the execution of a new deed. (Sugden on Vendors, chap. 11, § 4, Sub. Div. 15; Adams' Equity, 166, 337; Willard's Eq. 52, 301; *Cummings* v. *Coe*, 10 Cal. 529.) Therefore the judgment against the trustees and heirs of Mrs. Stewart was in a proper action and proper form, and the question is whether it will bind the after-born grandchildren if any, of Mrs. Stewart. We think it will.

The trustees, children and grandchildren of Mrs. Stewart could not cut off or affect the title in the land of unborn grandchildren by any conveyance *in pais.* (R. S. part 2, chap. 1, tit. 2, art. 1, § 14.) By such a conveyance they could convey no greater title than they had. The effect of such a conveyance was under consideration in (*Kilpatrick* v. *Barron*, 125 N. Y. 751, and *Harris* v. *Strodl*, 132 N. Y. 392.)

If the title to this land had actually been devolved under the will of Mrs. Stewart, and an action were brought to partition it, or to foreclose a mortgage upon it, or in some other way to change or extinguish the title, it would be the duty of the court to protect the rights of unborn grandchildren by setting apart land, or the proceeds of the land, to represent in some form their interests. (*Cheesman* v. *Thorne*, 1 Ed. Ch. 629; *Mead* v. *Mitchell*, 17 N. Y. 210; *Brevoort* v. *Grace*, 53 id. 245; *Monarque* v. *Monarque*, 80 id. 320.)

Where an estate is vested in persons living subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand not only for themselves, but also for

the persons unborn. This is a rule of convenience, and almost of necessity. The rights of persons unborn are sufficiently cared for, if, when the estate shall be sold under a regular and valid judgment, its proceeds take its place and are secured in some way for such persons. (Calvin on Parties, 48; Mitford's Pleadings, 173; 2 Spenc. Eq. Jur. 707; 1 Smith's Ch. 92; Story's Eq. Pl. §§ 144, 148; *Wills* v. *Slade,* 6 Ves. 498; *Gaskell* v. *Gaskell,* 6 Sim. 643. *Nodine* v. *Greenfield,* 7 Paige, 544.)

But here this land did not pass under the will of Mrs. Stewart. All that these plaintiffs asked in their suit against the trustees, children and grandchildren of Mrs. Stewart was a judgment confirming the title to the land which she had conveyed to Mr. Kent. The living parties defendant in that action were all opposed in interest to the plaintiffs, and the grandchildren belonged to and represented the class to which the unborn persons would belong. In such a case it is safe to permit the living to represent the unborn, and the unborn must be bound by the judgment confirming the title. There is no occasion for the court to make provision in the judgment for the persons not *in esse,* as they, by the adjudication of the court, never could have any interest in the land. The general rule that no person shall be bound by an adjudication in an action to which he is in no way a party has some exceptions, and does not inexorably apply to a case where, at the time of the adjudication, persons are not *in esse* who may be affected thereby. In *Monarque* v. *Monarque* the parties had a vested title to the land sought to be partitioned, subject, however, to open and let in after-born children. But no notice was taken of such after-born children in the judgment, and no provision whatever was made for them, and hence it was decided that a good title could not be given to a purchaser under the sale made in pursuance of the judgment. It was held, in harmony with what I have herein stated, that a judgment and sale in partition only concludes contingent interests of persons not in being when the judgment provides for and protects such interests by substituting the fund derived

from the sale of the land in place of it and preserving the fund to the extent necessary to satisfy such interests. In that case there had been an action for the construction of the will by which the land was devolved, and to that action all the persons living who were interested were made parties, and it was there decided that the provisions of the will giving interests to persons unborn were involved, and it was held in this court that that adjudication could not conclude or effect the persons not *in esse* for the reason that the action was not a proper one for the construction of the will; that the court took jurisdiction of the action only by consent, and that therefore its adjudication bound only those who consented and could not bind persons not in being. That case did not determine that in a proper action for the construction of a will persons not *in esse* could in no case be concluded by the judgment rendered therein. That they could be concluded I have no doubt, if the parties to the action properly brought were vested with the whole title, subject merely to the contingency that it might open and let in persons thereafter to be born. The adjudication in such a case, as well as that in the case brought by these plaintiffs against the trustees, children and grandchildren of Mrs. Stewart, is in the nature of an adjudication *in rem* and binds everybody.

Therefore the title tendered to the defendant was good, and so free from any reasonable doubt that it should be compelled to perform its contract and take the title.

It is also objected on behalf of the defendant, that the plaintiffs were not ready and able to give a proper deed to it at the time stipulated in the second contract, to wit: within six months from the date of that contract. After the making of that contract, as the learned court found, the parties made a verbal agreement by which the defendant was to take possession of the land, and use, occupy and enjoy the same until such time as the record title of the plaintiffs could be perfected, paying as rent therefor interest at the rate of five per cent on the purchase price. Under that agreement the defendant took possession of the land, and has continued in possession thereof

never having offered to surrender the same. These facts found by the trial court have support in the evidence, and we must take them as established and true, and they constitute in law a waiver of performance of the contract on plaintiffs' part at the time stipulated. The defendant could not retain possession of the land under the agreement, and at the same time repudiate the agreement, and refuse to take a deed tendered in pursuance thereof.

Our conclusion is that the judgment should be affirmed with costs.

All concur.

Judgment affirmed.